UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:08-cr-64-RLH-GWF |
| Plaintiff, | **O R D E R** |
| vs. | (Grimm Motion for New Trial #525; Mazzarella Motion for New Trial– #528) |
| STEVEN GRIMM, et al., | |
| Defendant(s). | |

Before the Court is Defendant Steven Grimm's ("Grimm") **Motion for New Trial** (#525, filed May 22, 2013 and Defendant Eve Mazzarella's ("Mazzarella") **Motion for New Trial** (#528, filed May 25, 2013) based on alleged *Brady/Giglio* violations. The Court has also considered Plaintiff United States' ("the government") Opposition (#533, filed July 2, 2013), and Defendants' Replies (#540, #541, filed July 22, 2013). For the reasons discussed below, the Court denies Defendants' motions.

**BACKGROUND**

The facts giving rise to this case are well-documented in the pleadings and the Court finds it unnecessary to repeat them at length. However, the Court briefly relates the facts relevant to this analysis.

On February 26, 2011, the Grand Jury returned a 14-count Second Superseding Indictment against Steven Grimm, Eve Mazzarella, and Melissa Beecroft.[1] (#175). Grimm and Mazzarella were charged with all 14-counts. Counts 10 and 14 were later dismissed against Mazzarella. (#350). All three defendants went to trial on October 11, 2011. (#268). During the trial, the government called Kim Brown, a former Mazzarella employee to help prove Counts 1 and 11. The government also called Alicia Hanna, a bank closing manager, to prove an element of Counts 2 through 7. After more than two months of trial, the jury found defendants guilty as to all remaining counts as charged in superseding indictment. (#355). On March 30, 2012, this Court sentenced Grimm to 25 years as to each count to run concurrently and Mazzarella to 14 years as to each count to run concurrently.

Over two years later, David Mark, Brown's fiancé who provided inculpatory evidence against Mazzarella while implicating himself in the fraud was also tried. During that trial, the government elicited testimony from Brown and Hanna. *See United States v. David M. Mark*, No. 2:11-cr-453-PMP-CWH. During the *Mark* trial, three pieces of evidence came to light that had not been disclosed by the government during the *Grimm/Mazzarella* trial: first, a statement by Assistant United States Attorney Brian Pugh (AUSA Pugh) where he said "tell the truth and you have nothing to worry about" to Brown; second, that Brown surreptitiously copied the files of Mazzarella's business and allegedly gave those documents to the government, and; third, an email from an FBI agent to Hanna in which Hanna asked the FBI agent to "keep [his] eyes open for any openings in the Charlotte field office for doc analysts!"

Based on these three undisclosed pieces of evidence, Grimm and Mazzarella argue that this undisclosed evidence could have been used to impeach Brown and Hanna and would have changed the outcome of the trial. Both Grimm and Mazzarella now move for a new trial based on *Brady/Giglio* violations, for additional discovery, and an evidentiary hearing. (#525, #528).

---

[1] Beecroft has not joined in the present motions and is not considered in this order.

**DISCUSSION**

**I. Legal Standard**

"There are three elements of a *Brady/Giglio* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Wilkes*, 662 F.3d 524, 535 (9th Cir. 2011)(internal citations omitted). Prejudice ensues "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011). There is a reasonable probability of prejudice when suppression of evidence undermines confidence in the outcome of the trial. *United States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013). Thus, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."[2] *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005). To determine prejudice, "the withheld evidence must be analyzed in the context of the entire record." *Olsen*, 704 F.3d at 1184 (internal quotations omitted).

//

//

**II. Analysis**

---

[2] "The terms 'material' and 'prejudicial' are used interchangeably in *Brady* cases. Evidence is not 'material' unless it is 'prejudicial,' and not 'prejudicial' unless it is 'material.' Thus, for *Brady* purposes, the two terms have come to have the same meaning." *Olsen*, 704 F.3d at 1184 n. 5.

The question under *Brady/Giglio* is whether there is a reasonable probability that, had the informal immunity agreement, surreptitious copying, and email been disclosed, it would have led to a different result. The parties generally agree these three pieces of evidence were not disclosed by the government. Therefore, the Court focuses its analysis on the exculpatory or impeaching nature of the evidence and whether it resulted in prejudice.

*A. Exculpatory or Impeaching Evidence*

The Court is not convinced that the evidence at issue is favorable to the defendants or that it would be impeaching. First, as to the statements made by AUSA Pugh to Brown, defendants characterize the statement as an informal immunity agreement. However, that general statement – "tell the truth and you have nothing to worry about" – was made in the presence of Mark and Brown and could not reasonably be construed as an immunity agreement for Brown specifically. Regardless, even if it were an informal immunity agreement, it would not serve to impeach her because Brown testified on numerous occasions that she and Mark came to the FBI of their own volition and that she wanted to "do the right thing." Therefore, her testimony was not motivated by any informal immunity agreement, but rather her own inclination and perception of morality. Accordingly, this agreement could not have impeached Brown.

Second, as to the documents that were surreptitiously copied, the mere fact that she made the copies would not serve to impeach Brown because Brown's copying was not motivated by any governmental pressure, but rather her own moral compass. To the extent defendants argue that concealment of the document copying amounted to the government hiding a Fourth Amendment violation, that argument also fails. Brown specifically testified that she did not work at the behest or encouragement of the government but copied documents because she thought it was the moral thing to do. Therefore, Brown was not a government actor capable of committing a Fourth Amendment violation. *See United States v. Reed*, 15 F.3d 928, 931-32 (9th Cir. 1994)(elucidating general principles for determining whether a private individual is acting as a governmental instrument or agent for Fourth Amendment purposes). Moreover, there is no

evidence that any of those alleged documents were ever given to the government, or that any of those alleged documents were used by the government.

Third, as to the email exchange between Hanna and the FBI Agent, any statements that Hanna made seeking notifications of possible employment opportunities were innocuous and extremely unlikely to serve as impeachment evidence. However, the Court need not go in depth because even if all three of these pieces of evidence was favorable to the defendants or did tend to impeach the witnesses, non-disclosure of this evidence did not result in prejudice to the defendants.

*B. Prejudice Ensued*

Upon a careful review of the record, the Court concludes that there is no reasonable probability that the verdict would have been different if the evidence had been disclosed. The Court is confident that the jury would have found the defendants guilty, based on the overwhelming evidence presented by the government and the testimony of several other witnesses.

First, even if the defense had used the alleged informal immunity agreement to impeach Brown, the jury would likely have still found her to be credible. To be sure, the defense attempted to discredit of other witnesses with their formal written immunity agreements. Despite this, the jury considered the impeachment and overwhelming believed many other witnesses who had written immunity agreements, which shows the failure to disclose AUSA Pugh's statement would not have changed the result.

Second, even if the defense had used the alleged copying of documents to show Brown's bias in favor of the government, the extensive corroborating evidence in the form of other witness testimony would have likely caused the jury to believe Brown regardless. Moreover, even if Brown were acting as a government agent and did copy and produce those documents, those documents were not used as a basis for the government's case in chief. Additionally, to the extent the defense argues lack of access to the documents, the argument fails. Even if the government had the alleged copies, the copies were equally available to both the government and defense

1   because the alleged copied documents were taken from originals in Mazzarella's possession.[3]

2   Therefore, Mazzarella had ample access to the documents and the alleged non-disclosure could not

3   have caused prejudice.

4       Third, even assuming the defense had used Hanna's email to impeach her, the jury

5   would likely have still found her to be credible. Hanna's impeachment would have had little to no

6   effect because her testimony was verified by independent documentation and the testimony of

7   several other witnesses, who the jury ultimately believed.

8       Last, even if all three pieces of evidence were favorable to the defendants or

9   impeaching and were not disclosed, there still would be no change in the final result of the

10  proceedings.  The government is correct in their assertion that the testimony of Brown only

11  contributed to Count 1 minimally, and Count 11 only slightly more.  Hanna's testimony related

12  only to Counts 2 through 7.  Thus, even if the jury had acquitted the defendants on those eight

13  charges (1-7 and 11), that would still not result in prejudice because this Court imposed identical

14  concurrent sentences for each of the convicted counts.  To be sure, there were additional convicted

15  counts upon which the sentence could rest — six additional convicted counts for Grimm, and four

16  for Mazzarella — each carrying an identical, concurrent sentence.

---

19  [3] Several circuits have addressed this exact issue. *United States v. Hernandez*, 490 F.3d
20  81, 85 (1st Cir. 2007) (no *Brady* violation where records were equally available to prosecution
    and defense); *United States v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997) (no *Brady* violation
21  despite failure to disclose evidence that witness had mental disorders because defendants had
    actual knowledge of the disorder and defendants could have obtained information about the
22  illness with due diligence); *United States v. Pelullo*, 399 F.3d 197, 215-16 (3d Cir. 2005) (no
    *Brady* violation despite failure to disclose documents because defendant had sufficient access
23  to them); *United States v. Bracy*, 67 F.3d 1421, 1428-29 (9th Cir. 1995) (no *Brady* violation
    despite failure to disclose evidence regarding witness cooperation because government
24  provided evidence sufficient for defense to discover witness' history); *LeCroy v. Sec'y, Fla.
25  Dep't of Corr.*, 421 F.3d 1237,1267-68 (11th Cir. 2005) (no *Brady* violation despite failure
    to turn over defendant's records because defendant could have obtained own records with
26  reasonable diligence).

AO 72
(Rev. 8/82)

        Despite the government's alleged failure to disclose the alleged informal immunity agreement, surreptitious copying, and email, the defendants received "a trial resulting in a verdict worthy of confidence." Even if the evidence of the alleged informal immunity agreement and email was used to impeach Brown and Hanna, the jury would still have believed Brown and Hanna because of independent corroborating evidence. Moreover, even if Brown and Hanna's credibility as witnesses had been totally destroyed, the jury completely disregarded their testimony, and acquitted on the charges related to their testimony, the end result and sentence would still not change. Viewing this evidence "in the context of the entire record," the Court finds no reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.

## CONCLUSION

        Accordingly, and for good cause appearing,

        IT IS HEREBY ORDERED that Defendant Steven Grimm's **Motion for New Trial** (#525) is DENIED.

        IT IS FURTHER ORDERED that Defendant Eve Mazzarella's **Motion for New Trial** (#528) is DENIED.

        Dated: July 26, 2013.

_____
**ROGER L. HUNT**
**United States District Judge**