# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 2:08-cr-64-RLH-GWF |
| )  Plaintiff, ) | **O R D E R** |
| ) vs. ) | (Mazzarella Second Motion for New Trial– #555) |
| ) EVE E. MAZZARELLA, et al., ) | |
| )  Defendants. ) | |

Before the Court is Defendant Eve E. Mazzarella's ("Mazzarella") **Second Motion for New Trial** (#555, filed Nov. 21, 2013) based on alleged *Brady/Giglio* violations. Defendant Steven Grimm joins in the Motion (#556, filed Nov. 21, 2013). The Court has also considered Plaintiff United States' ("the government") Opposition (#558, filed Dec. 5, 2013), and Defendant's Reply (#559, filed Dec. 10, 2013). For the reasons discussed below, the Court denies Mazarella's Motion.

\\\

\\\

\\\

\\\

**BACKGROUND**

On July 27, 2013, this Court denied Defendant Grimm and Defendant Mazzarella's (collectively, "Defendants") First Motion for New Trial based on alleged *Brady/Giglio* violations ("First Motion").[1] (#542.) That Motion was based on Defendants' allegations of *Brady/Giglio* violations encompassing the government's failure to disclose three pieces of impeachment evidence about two of its witnesses. The first piece was a statement by Assistant United States Attorney Brian Pugh (AUSA Pugh) where he said "tell the truth and you have nothing to worry about" to another potential witness, but in the presence of witness Kim Brown. The second was the fact that Brown surreptitiously copied the files of Defendant's business and allegedly gave those documents to the government. Finally, the third was an email from an FBI agent to witness Alicia Hanna, in which Hanna asked the FBI agent to "keep [his] eyes open for any openings in the Charlotte field office for doc analysts!" Defendants asserted that the government had made an informal immunity agreement with Brown, that Brown had worked as an agent of the government in copying the files, and that Hanna was seeking employment with the FBI. Defendants argued that this evidence could have been used to show the witnesses' bias and impeach them. Defendants further argued that, had this information been brought before the jury, the outcome of the trial would have been different.

In denying the Motion, the Court noted several problems with Defendants' arguments including that AUSA Pugh's statement was not made directly to Brown and did not constitute an immunity agreement, that Brown's copying was not as a government agent but rather motivated by her oft repeated desire to "do the right thing," and that Hanna's statement in the email was innocuous and not impeachment evidence. Additionally, the Court held that no prejudice resulted as a result of any alleged non-disclosure because the witnesses' testimonies

---

[1] Although it was the first Motion for New Trial asserting *Brady/Giglio* theories, it was Defendants' second Motion for a new trial. The current Motion is the third Motion for New Trial.

2

were corroborated by several other witnesses' testimonies as well as documentary evidence. Further, the copied documents were not in the government's case-in-chief, but even if they had been, as the Defendant's own documents, they were accessible to her for trial preparation. The Court also noted that Brown and Hanna only testified as to some counts, and that even if the outcome were different on those counts, Defendants were convicted on other counts, independent of Brown and Hanna's testimonies, for which concurrently running sentences were imposed. Thus, even accepting Defendants' assertions and arguments as true, their sentence would not change.

Mazzarella now brings this Second Motion for New Trial based on allegations that the government failed to disclose the immunity agreement of another witness, Jennifer Wolff. Defendant requests that the Court allow discovery, hold an evidentiary hearing, and ultimately, conduct a new trial.

**DISCUSSION**

**I. Legal Standard**

"There are three elements of a *Brady/Giglio* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Wilkes*, 662 F.3d 524, 535 (9th Cir. 2011) (internal citations omitted). Prejudice ensues "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011). There is a reasonable probability of prejudice when suppression of evidence undermines confidence in the outcome of the trial. *United States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013). Thus, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* "The mere possibility that an item of undisclosed information might have helped

1   the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the
2   constitutional sense."[2]  *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005).  To determine
3   prejudice, "the withheld evidence must be analyzed in the context of the entire record." *Olsen*,
4   704 F.3d at 1184 (internal quotations omitted).

**II. Analysis**

The basis for Mazzarella's theory of an immunity agreement is based on Jennifer Wolff's testimony in the trial of another defendant implicated as part of the same scheme for which Defendant was convicted.  *United States v. Marcianti*, 2:11-cr-00452-PMP-CWH.  While cross examining Wolff, defense counsel stated, "[y]ou had an agreement with the United States Attorney's Office that you would not be prosecuted if you came in and testified."  To that statement Wolff responded, "It was -- yes."  Based on this response, Defendant concludes that Wolff was offered immunity for her testimony against Mazzarella, and the government failed to disclose that agreement.  Mazzarella argues that the fact that this information was made available to the jury, considered in aggregate with the arguments presented in the First Motion, undermines confidence in the outcome of the trial.  The Court disagrees.

First, the argument that an immunity agreement existed and influenced Wolff's testimony at Mazzarella's trial is tenuous at best.  Wolff's answer provides no information about whether the supposed immunity agreement was in place at the time of her testimony at Mazzarella's trial—more than, two years before Wolff's testimony in the Marcianti trial. Moreover, upon hearing about Wolff's testimony in the Marcianti matter, ASUA Pugh sent Mazzarella's counsel a letter stating that no such agreement was offered to Wolff for her testimony against Mazzarella. (#555-1.)  Additionally, the government has provided an affidavit of Senior

---

[2] "The terms 'material' and 'prejudicial' are used interchangeably in *Brady* cases. Evidence is not 'material' unless it is 'prejudicial,' and not 'prejudicial' unless it is 'material.' Thus, for *Brady* purposes, the two terms have come to have the same meaning." *Olsen*, 704 F.3d at 1184 n. 5.

4

1  Litigation Counsel Daniel Schiess, the prosecutor in the Marcianti matter, attesting that Wolff
2  represented that to him that "during her first meeting or one of her first meetings with the United
3  States Attorney's Office in [Mazzarella's] matter . . . she was told or understood . . . that the
4  government intended to use her as a witness and from that statement or understanding, she
5  understood that she would not be prosecuted." (#558-1.)  Mr. Schiess noted, "[s]he did not say
6  that she was promised immunity nor did she say that anyone told her that she would not be
7  prosecuted." (*Id*.)  Thus, the position of the government is that any supposed immunity agreement
8  is only of Wolff's own misunderstanding.  In any event, Wolff's testimony in the Marcianti matter
9  does not establish that an immunity agreement existed in exchange for her testimony against
10 Mazzarella.

11         Recognizing as much, Mazzarella requests that discovery be allowed to investigate
12 the matter, and an evidentiary hearing be held "to determine the precise nature of Ms. Wolff's
13 interactions with Ms. Mazzarella's prosecutors." (#559.)  However, an investigation about whether
14 an immunity existed is unnecessary because, even assuming Wolff was offered immunity in
15 exchange for her testimony against Mazzarella, the government's non-disclosure of that fact did
16 not result in prejudice to Mazzarella.  As the Court noted in its Order denying Defendants' First
17 Motion, the government established its case with numerous witnesses and corroborating
18 documentary evidence. (*See* #533, at 15-17.)  Thus, Wolff, Brown, and Hanna's testimonies were
19 not singular or linchpin to the government's case; there was a substantial amount of other evidence
20 from which the jury could reach the same conclusions.  Consequently, even assuming both that
21 those witnesses had immunity agreements and that those agreements would have discredited their
22 testimonies in the eyes of the jurors, the Court does not find that this would "undermine[ ]
23 confidence in the outcome of the trial."[3]

---

[3] The Court additionally notes that even if all the challenged witnesses were impeached, discredited, and the outcome of the counts they testified to was undermined, Defendant's sentence would remain the same.  Defendant asserts that Wolff's testimony related to Counts 1, 2, 7, 9, 10, 12, and 14.  Brown and Hanna's testimony related to claims

5

Consequently, the Court finds that there is no need to conduct a new trial. Additionally, to the extent that Mazzarella's Motion is a request for discovery to explore if additional information could be found to bolster Defendants *Brady/Giglio* argument, the Court does not find it prudent to allow such a fishing expedition.  Mazzarella requests the Court order the U.S. Attorney's Office to appoint a separate attorney to examine emails, memoranda, notes, and text messages of any agent ever involved with the investigation, and review all witness interviews and trial preparation meetings, seeking to identify any information "that could cast doubt on a prosecution witness' credibility."  Mazzarella bases her request on her own assumption that the investigative record is rife with undisclosed *Brady/Giglio* materials.  However, the scant evidence presented to date by Mazzarella in support of these allegations has failed to *affirmatively* show a single suppression on the part of the government, and cannot justify a purely exploratory inquiry into the government's investigation.  For this reason, Mazzarella's request for discovery is denied.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant Eve E. Mazzarella's **Motion for New Trial** (#555) is DENIED.

Dated: December 17, 2013.

_____
**ROGER L. HUNT**
**United States District Judge**

---

1, 2-7, and 11. However, Defendant was still convicted on two other counts, for which identical and concurrent sentences were imposed.

AO 72
(Rev. 8/82)